**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**


Mary Hersey McCarthy

    v.                                    Civil No. 16-cv-081-LM
                                        Opinion No. 2016 DNH 122
WPB Partners, LLC


**O R D E R**

In a case that has been removed from the Strafford County
Superior Court, Mary Hersey McCarthy has sued WPB Partners, LLC
("WPB") in eight counts.  Her claims arise from the manner in
which WPB conducted a foreclosure sale of a property that she
had mortgaged to secure the repayment of a loan.  Before the
court is defendant's motion to dismiss five of plaintiff's eight
claims.  Plaintiff objects.  The court heard oral argument on
defendant's motion on July 8, 2016.  For the reasons that
follow, defendant's motion to dismiss is granted.

## I. The Legal Standard

Under Rule 12(b)(6) of the Federal Rules of Civil
Procedure, the court must accept the factual allegations in the
complaint as true, construe reasonable inferences in the
plaintiff's favor, and "determine whether the factual
allegations in the plaintiff's complaint set forth a plausible
claim upon which relief may be granted."  Foley v. Wells Fargo

Bank, N.A., 772 F.3d 63, 71 (1st Cir. 2014) (citation omitted).
A claim is facially plausible "when the plaintiff pleads factual
content that allows the court to draw the reasonable inference
that the defendant is liable for the misconduct alleged."
Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Analyzing
plausibility is "a context-specific task" in which the court
relies on its "judicial experience and common sense."  Id. at
679.

## II. Background

The facts recited in this section are drawn from
plaintiff's complaint or from court documents incorporated by
reference therein.  See Foley, 772 F.3d at 71-72 (citing
Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)).

On December 21, 2006, McCarthy received a loan of $350,000
from Investment Realty Funding, Inc. ("IRF").  In a promissory
note, McCarthy agreed to repay the loan in 36 months, at an
interest rate of 16.5 percent.  The note also provides: (1) "The
Borrower represents to the Lender that the proceeds of this Note
will not be used for personal, family, or household purposes,"
doc. no. 9-1, at 5 of 15; and (2) "THIS PROMISSORY NOTE IS FOR
BUSINESS PURPOSES ONLY," id. at 6 of 15.

McCarthy defaulted on her obligation to repay the loan.  In
response, WPB, which had acquired the note and the mortgage,

initiated foreclosure proceedings.  McCarthy sued WPB in state court to enjoin the foreclosure sale.[1]  WPB asserted a counterclaim for breach of contract, based upon McCarthy's failure to make the payments required by the promissory note. WPB removed the case to this court, where it was assigned to Judge McAuliffe and docketed as 11-cv-207-SM.  As McCarthy and WPB were litigating 11-cv-207-SM, McCarthy declared bankruptcy, and WPB's counterclaim was stayed for about six months.

After 11-cv-207-SM was reopened,[2] Judge McAuliffe dismissed most of McCarthy's claims and granted WPB summary judgment on the one claim that he had not dismissed.  In addition to granting WPB summary judgment on McCarthy's claim, Judge McAuliffe also granted WPB summary judgment on its counterclaim for breach of contract and awarded $433,433.03[3] in liquidated damages.

---

[1] In that action, McCarthy identified herself as "Mary Hersey."  For the sake of clarity, the court will refer to plaintiff as "McCarthy" throughout this order.

[2] Judge McAuliffe reopened 11-cv-207-SM after the Bankruptcy Court granted WPB relief from the automatic stay for the limited purpose of resolving the legal issues presented in that case.

[3] Judge McAuliffe's order states that the parties agreed to liquidated damages in the amount of $443,443.03, Hersey v. WPB Partners, LLC, No. 11-cv-207-SM, doc. no. 64 at 4, but then awarded $433,433.03 in liquidated damages.  Id. at 5.  Hersey uses both figures in her complaint.  Because Judge McAuliffe awarded $433,433.03 the court uses that number.

In its motion for summary judgment, WPB asserted that "[t]he amount due and payable under the Promissory Note including principal and accrued interest is currently $558,048.49 as of July 31, 2012 with interest accruing at the per diem rate of $186.99." Hersey, doc. no. 53-1, at 5. Judge McAuliffe characterized the amount of liquidated damages he awarded this way:

> During the pretrial conference held on February 7, 2014, the court disclosed its intention to grant [WPB's] motions for summary judgment. Following a discussion with respect to the existence of any material dispute related to calculating the liquidated damages amount, the parties agreed that the amount of $443,443.03, as of September 6, 2011 (a date contemporaneous with the filing of the bankruptcy petition) would be appropriate. That amount represents a calculation decidedly in [McCarthy's] favor, and an amount based in substantial part on [McCarthy's] own expert's opinion. By agreeing to entry of judgment in that amount, less than it reasonably could expect, [WPB] pragmatically recognized that the property's value is substantially less than the judgment amount, and no useful purpose would be served by the expenditure of additional time and resources to arrive at a higher, more accurate, but unimportant figure.

Hersey, doc. no. 64, at 4-5.

Next, WPB moved the Bankruptcy Court for "relief from the automatic stay of 11 U.S.C. § 362(d)(1) and (2) [in order] to proceed against the [mortgaged] Property." Hersey, doc. no. 77-2, at 2 of 9. In her complaint in this case, McCarthy makes

4

the following allegations concerning the hearing the Bankruptcy

Court held on WPB's motion:

> 20.  . . . [WBP] argued that its secured claim at
> the time of the November 20, 2014 hearing totaled
> approximately $672,079.24, including principal,
> interest, attorney's fees, and costs, with a
> continuing per diem increase of $183.30.
>
> 21.  [WPB] failed to represent to the Bankruptcy
> Court that its judgment in [11-cv-207-SM] on the
> Plaintiff's debt under the promissory note was limited
> to $433,433.03.
>
> . . . .
>
> 23.  The Bankruptcy Court made no mention in its
> Order of the . . . judgment amount [in 11-cv-207-SM]
> of $433,433.03.

Doc. no. 1-1, at 4 of 14.

In his order on WPB's motion, Judge Deasy described WPB's

secured claim this way:

> WPB's managing member testified as to the amount
> of the secured claim that WPB has against the
> Property.  On the day of the hearing, November 20,
> 2014, the claim totaled $672,079.24, including
> principal, interest, attorney's fees, and costs.  The
> per diem increase on this claim is $183.30, which
> amounts to about $5,500 a month ($180.30 * 30 days =
> $5,499).  The Debtor presented no evidence to the
> contrary.  The Court, accordingly, accepts WPB's
> accounting of its secured claim for the purpose of the
> Motion.

Hersey, doc. no. 77-2, at 4 of 9 (emphasis added).  There is

nothing in the record before this court to suggest that WPB's

managing member disclosed to the Bankruptcy Court the amount of

the judgment WPB won in 11-cv-207-SM.  But, at the same time,

Judge Deasy's statement that McCarthy offered no evidence to
counter the testimony introduced by WBP suggests that despite
having had the opportunity to do so, McCarthy did not inform the
Bankruptcy Court of the amount of WPB's judgment against her.

At the hearing in the Bankruptcy Court, WPB's appraiser
valued the mortgaged property at $535,000.  McCarthy's appraiser
valued it at $900,000.  Judge Deasy pegged the fair market value
of the property at $705,000.

Taking into account both the amount of WPB's secured claim
($672,079.24) and the value of the mortgaged property
($705,000), Judge Deasy determined that "[a]s of the [date of
the] hearing, WPB had an equity cushion of slightly less than
5%." Hersey, doc. no. 77-2, at 9 of 9.  On that basis, he found
that WPB had "proven that it lack[ed] adequate protection with
regard to its secured claim." Id.  Accordingly, he granted
WPB's motion for relief from the stay and authorized WPB to
"pursue its remedies against the Property." Id.  WPB conducted
a foreclosure sale in March of 2015.  WPB was the high bidder,
and it purchased the property for $500,000.

In May of 2015, WPB filed a motion in 11-cv-207-SM asking
Judge McAuliffe to grant a post-judgment attachment on
McCarthy's real and personal property, in order to protect its
ability to collect the difference between the $500,000 it

6

received at the foreclosure sale and the amount it claimed it was then owed by McCarthy, $757,486.79.[4]  Judge McAuliffe denied WPB's motion, noting that the motion itself "suggest[ed] that the foreclosure sale resulted in a monetary recovery that exceeded the judgment amount."  Hersey, doc. no. 91.  Judge McAuliffe also noted that $433,433.03 was "the amount [WPB's] counsel specifically agreed to accept as the judgment amount in lieu of proving up damages at the time summary judgment was entered," and stated that it was "far too late for counsel or defendant to reconsider that reasonable choice."  Id.

This action followed.  In it, McCarthy asserts claims for breach of contract (Count I); breach of the duty of due diligence (Count II); breach of the duty of good faith (Count III); violation of the New Hampshire Unfair, Deceptive, or Unreasonable Collection Practices Act ("UDUCPA"), N.H. Rev. Stat. Ann. ("RSA") ch. 358-C (Count IV); violation of the New Hampshire Consumer Protection Act ("CPA"), RSA ch. 358-A (Count V); violation of the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. (Count VI); negligent

---

[4] That figure is made up of the $433,433.03 judgment that WPB received in September of 2011, plus interest and the attorney's fees and expenses that WPB had incurred since the date of Judge McAuliffe's judgment against McCarthy.

misrepresentation (Count VII); and enhanced compensatory damages (Count VIII).

### III. Discussion

WPB moves to dismiss Counts IV through VII for failure to state a claim upon which relief may be granted, and moves to dismiss Count VIII on grounds that enhanced compensatory damages is not a cause of action.  The parties have agreed to the dismissal of Count VIII.  In the discussion below, the court considers each of the claims that McCarthy asserts in Counts VI through VII.

### A. Count IV: RSA 358-C

In Count IV, McCarthy asserts that WPB violated RSA 358-C:3, VII, by failing to tell the Bankruptcy Court the amount of its judgment against her and by telling the Bankruptcy Court that she owed it $672,079.24, rather than the $433,433.03 that Judge McAuliffe had awarded in 11-cv-207-SM.  She further asserts that WPB violated RSA 358-C:3, VIII, by improperly representing "to the Bankruptcy Court that its secured claim against [her] was subject to increase for ongoing attorney's fees, despite the claim in fact being limited to the discrete amount of $443,443.03."  Doc. no. 1-1, at 9 of 14.  Defendant moves to dismiss Count IV, arguing that: (1) plaintiff has not adequately alleged that it, WPB, is a debt collector, as that

term is defined in the UDUCPA; and (2) the statements to the Bankruptcy Court on which plaintiff bases Count IV are not actionable because they are subject to the litigation privilege. Defendant's first argument carries the day.

As Judge Laplante has explained, to recover under the UDUCPA, a plaintiff

> must show that: "(1) [she has] been the object of collection activity arising from a consumer debt; (2) the defendant attempting to collect the debt qualifies as a 'debt collector' under the Act; and (3) the defendant has engaged in a prohibited act or has failed to perform a requirement imposed by the [Act]."

Moore v. Mortg. Elec. Registration Sys., Inc., 848 F. Supp. 2d 107, 124 (D.N.H. 2012) (quoting Beadle v. Haughey, No. Civ. 04-272-SM, 2005 WL 300060, at *2 (D.N.H. Feb. 9, 2005); citing Gilroy v. Ameriquest Mortg. Co., 632 F. Supp. 2d 132, 134-37 (D.N.H. 2009)).[5]

The UDUCPA defines the term "debt collector" to mean "[a]ny person who by any direct or indirect action, conduct or practice enforces or attempts to enforce an obligation that is owed or

---

[5] Pertinent to McCarthy's claims in this case, the UDUCPA prohibits debt collectors from making: (1) "any material false representation or implication of the character, extent or amount of the debt, or of its status in any legal proceeding," RSA 358-C:3, VII; or (2) "any representation that an existing obligation may be increased by the addition of attorney's fees, investigation fees, service fees or any other fees or charges when in fact such fees or charges may not be legally added to the existing obligation," RSA 358-C:3, VIII.

due, or alleged to be owed or due, by a consumer as a result of a consumer credit transaction." RSA 358-C:1, VIII(a). The UDUCPA defines the term "consumer" to "mean[ ] a natural person who seeks or acquires, or is offered property, services or credit for personal, family or household purposes." RSA 358-C:1, I.

Count IV does not state a claim upon which relief may be granted because plaintiff has failed to allege facts that, if proven, would establish that WPB qualifies as a debt collector under the UDUCPA. In her complaint, plaintiff asserts that "[a]t all times relevant, the Defendant was a 'debt collector' as defined by RSA 358-C:1, VIII and engaged in a debt collection activity arising from a debt of the Plaintiff." Doc. no. 1-1, at 8 of 14. However, plaintiff alleges no facts to support that legal conclusion. Specifically, she does not allege that she sought or acquired her loan from IRF for personal, family, or household purposes, which is necessary to make her a consumer and WBP a debt collector.

Moreover, plaintiff's conclusory assertion that WPB was a debt collector is squarely refuted by two separate statements in her promissory note, which establish that she acquired her loan from IRF "not . . . for personal, family, or household purposes," doc. no. 9-1, at 5 of 15 (emphasis added), but for

"FOR BUSINESS PURPOSES ONLY," id. at 6 of 15.  Indeed, in his order granting summary judgment in 11-cv-207-SM, Judge McAuliffe stated: "There is no serious dispute on this record . . . that [McCarthy's] loan was a business loan made for the purpose of funding real estate development."  Hersey, doc. no. 64, at 3.  Thus, McCarthy was not acting as a consumer when she incurred her debt to IRF.  Accordingly, WBC was not acting as a debt collector when it made the representations to Judge Deasy that are the basis for Count IV.  Because plaintiff has not adequately alleged that WBC qualifies as a debt collector, her UDUCPA claim necessarily fails.

Plaintiff makes several attempts to save her claim, but none is effective.  First, she characterizes her promissory note as a contract of adhesion that contains terms that are beyond the comprehension of a lay person.  The relevant language of the promissory note, quoted above, is neither technical nor otherwise arcane; it is not beyond the comprehension of a lay person.

As for the nature of McCarthy's agreement with IRF, the New Hampshire Supreme Court ("NHSC") has "recognized the detrimental effects that often result in transactions involving . . . adhesion contracts."  Mills v. Nashua Fed. Sav. & Loan Ass'n, 121 N.H. 722, 726 (1981) (citing Pittsfield Weaving Co. v. Grove Textiles, Inc., 121 N.H. 344, 347 (1981)).  However, in Mills,

11

the court held that the mortgage agreement at issue was <u>not</u> a contract of adhesion.  See 121 N.H. at 726.  The conclusion in <u>Mills</u> would appear to apply to McCarthy's promissory note. Given plaintiff's factual allegations, with all reasonable inferences construed in her favor, see Foley, 772 F.3d at 71, the court can discern no basis for a finding that "the imbalance in bargaining power of the parties rendered the [promissory note] so coercive and one-sided as to prevent [McCarthy] from having voluntarily assented to its terms so that it constituted a contract of adhesion." Pittsfield Weaving, 121 N.H. at 347 (citation omitted).  Thus, McCarthy is bound by the representations in her promissory note concerning the way she intended to use the proceeds of her loan from IRF.

In addition to disavowing the representations in her promissory note, plaintiff makes two related moves.  She has produced an affidavit in which she says that notwithstanding the representations in her promissory note, she did, in fact, use some of the proceeds from the loan for personal purposes, and she seeks leave to amend her complaint to add factual allegations to that effect.  Even if the facts in plaintiff's affidavit had been alleged in her complaint, or were alleged in an amended complaint, that would not save Count IV from dismissal.

At best, the facts in McCarthy's affidavit establish one of two things: (1) she misrepresented her intentions when she agreed, in the promissory note, that she would use the proceeds of the loan exclusively for business purposes; or (2) after she received the loan, she changed her mind and used its proceeds for purposes that ran counter to the representations she made in the note.  One way or the other, McCarthy's affidavit does not establish that when IRF made the loan, <u>it</u> had any reason to believe that McCarthy intended to use the proceeds from that loan for purposes that would make it, or its successors in interest, subject to the UDUCPA.  Accordingly, any amendment to plaintiff's complaint to add the facts from her affidavit would be futile, because those facts would not establish that IRF agreed to make a loan to McCarthy with the understanding that she would use any of its proceeds for personal, family, or household purposes.

Because McCarthy has not adequately alleged that WPB was a debt collector, and has no basis for doing so, defendant is entitled to dismissal of Count IV.

### B. Count IV and V: RSA 358-A

In Count IV, McCarthy asserts that by violating the UDUCPA, WPB also violated the CPA.  She bases her derivative CPA claim on RSA 358-C:4, VI, which provides that "[a]ny violation of the

provisions of [the UDUCPA] shall also constitute an unfair and
deceptive act or practice within the meaning of RSA 358-A:2 and
may be enforced by the attorney general pursuant to RSA 358-A."
In Count V, McCarthy asserts the following independent CPA
claim:

> [b]y misrepresenting the amount and nature of [her]
> debt [to the Bankruptcy Court], specifically that such
> debt was $672,079.24 rather than the discrete amount
> of $443,443.03 dictated by the . . . judgment [in 11-
> cv-207-SM], the Defendant committed an unfair and
> deceptive act or practice in the conduct of trade and
> commerce in New Hampshire pursuant to RSA 358-A:2,
> relative to its loan servicing.

Doc. no. 1-1, at 9-10 of 14.  The court considers each CPA claim
in turn.

### 1. Plaintiff's Derivative CPA Claim (Count IV)

Defendant moves to dismiss plaintiff's derivative CPA claim
on grounds that RSA 358-C:4, VI, does not create a private right
of action, and it also invokes the litigation privilege.
Defendant's first argument appears to be correct, see Gustafson
v. Recovery Servs., No. 14-cv-305-JD, 2015 WL 5009108, at *4
(D.N.H. Aug. 21, 2015), but plaintiff's derivative CPA claim
fails for an antecedent reason: the lack of a viable UDUCPA
claim.

### 2. Plaintiff's Independent CPA Claim (Count V)

Defendant moves to dismiss plaintiff's independent CPA
claim on grounds that the conduct on which it is based falls

14

outside the scope of the unlawful acts described in RSA 358-A:2.
WPB also invokes the litigation privilege.  The court agrees
with defendant that plaintiff has not alleged conduct that is
actionable under the CPA.

The CPA outlaws various "unfair method[s] of competition
[and] unfair or deceptive act[s] or practice[s] in the conduct
of any trade or commerce within this state."  RSA 358-A:2.  The
statute defines trade and commerce to

> include the advertising, offering for sale, sale, or
> distribution of any services and any property,
> tangible or intangible, real, personal or mixed, and
> any other article, commodity, or thing of value
> wherever situate, and shall include any trade or
> commerce directly or indirectly affecting the people
> of this state.

RSA 358-A:1, II.  As the NHSC has explained: "Fraudulent or
deceptive conduct can be actionable under the [CPA] only if it
occurs in a business setting involving the advertising or sale
of a commodity or service as part of the day-to-day business of
the defendant."  Green Mtn. Realty Corp. v. Fifth Estate Tower,
LLC, 161 N.H. 78, 87 (2010) (quoting Brzica v. Trs. of Dartmouth
Coll., 147 N.H. 443, 451 (2002)).

While IRF may have engaged in trade and commerce when it
made a loan to McCarthy, this court has no difficulty concluding
that WPB was not engaged in trade or commerce when it moved the
Bankruptcy Court to grant relief from the automatic stay and
made representations concerning the amount of its secured claim.

At that point, WPB was seeking to collect a business debt and/or enforce a judgment; it was not doing anything that falls under the definition of trade and commerce articulated in RSA 358-A:1, II.  Moreover, the alleged misrepresentations upon which Count V is based were not directed toward a consumer, i.e., McCarthy; they were directed to Judge Deasy.  In short, defendant is entitled to dismissal of Count V because the conduct on which it is based did not take place in trade and commerce.

Based upon that conclusion, it is no surprise that the conduct on which Count V is based, making a misrepresentation in a legal proceeding, does not appear in the list of unlawful acts in RSA 358-A:2.  While that list is not exhaustive, "[f]or conduct not particularized by the CPA to qualify as unfair or deceptive, it must be of the same type as that proscribed in the enumerated categories." State v. Sideris, 157 N.H. 258, 262 (2008) (citing State v. Moran, 151 N.H. 450, 452 (2004)); see also Roberts v. Gen. Motors Corp., 138 N.H. 532, 539 (1994). Even if WPB had misrepresented the amount and nature of McCarthy's debt to the Bankruptcy Court, that conduct is so dissimilar to the acts enumerated in RSA 358-A:2 that it cannot serve as the basis for a CPA claim, which also entitles defendant to dismissal of Count V.

## C. Count VI: Fair Debt Collection Practices Act ("FDCPA")

In Count VI, McCarthy asserts that WPB violated 15 U.S.C.
§§ 1692e(2)(A), 1692e(8), and 1692e(10), by

> represent[ing] to the Bankruptcy Court that its
> secured claim against the Plaintiff was $672,079.24
> and counting, and fail[ing] to represent to the
> Bankruptcy Court that its judgment in [11-cv-207-SM]
> on the Plaintiff's debt under the promissory note, and
> thus the controlling debt amount, was in fact limited
> to $433,433.03.

Doc. no. 1-1, at 10 of 14.  Defendant moves to dismiss Count VI,

arguing that: (1) plaintiff has not adequately alleged that WPB

is a debt collector; (2) plaintiff has not adequately alleged

that WPB was attempting to collect a debt, as that term is

defined in the FDCPA; and (3) plaintiff's FDCPA claim is barred

by the statute of limitations.  Defendant is entitled to

dismissal of Count VI because plaintiff's FDCPA claim is barred

by the statute of limitations.

The FDCPA prohibits debt collectors from engaging in

various forms of conduct.[6]  However, actions under the FDCPA must

---

[6] Pertinent to McCarthy's claims in this case, the FDCPA
prohibits debt collectors from: (1) falsely representing "the
character, amount, or legal status of any debt," 15 U.S.C. §
1692e(2)(A); (2) "[c]ommunicating or threatening to communicate
to any person credit information which is known or which should
be known to be false, including the failure to communicate that
a disputed debt is disputed," 15 U.S.C. § 1692e(8); and (3)
using "any false representation or deceptive means to collect or
attempt to collect any debt or to obtain information concerning
a consumer," 15 U.S.C. § 1692e(10).

be brought "within one year from the date on which the violation occurs."  15 U.S.C. § 1692k(d).

McCarthy filed her complaint against WPB in the Strafford County Superior Court on January 13, 2016.  WPB made the representations to the Bankruptcy Court that underpin Count VI no later than November 20, 2014, at the hearing on WPB's motion for relief from the automatic stay.  Thus, those representations were made more than one year before McCarthy filed this action, which falls outside the one-year limitation period.

Plaintiff attempts to evade the operation of the statute of limitations by arguing that she filed her complaint within one year after she sustained actual damages, which was no earlier than January 22, 2015, the date of Judge Deasy's order granting WPB relief from the automatic stay.  The court is not persuaded.

As a preliminary matter, plaintiff cites no authority for the proposition that the FDCPA limitation period begins to run only after a prospective plaintiff has suffered an actual injury.  Her attempt to evade the statute of limitations is further undermined by: (1) her knowledge of all the facts necessary to assert her claim (the amount of WPB's judgment against her and the amount of WPB's claim against the bankruptcy estate) at the time of the hearing in the Bankruptcy court; and (2) the foreseeability of the damages that might result from WPB's representations at the time WPB made them.

18

Application of the statute of limitations to bar plaintiff's FDCPA claims is further supported by Judge Rice's decision in Kline v. Mort. Elec. Security Sys., 659 F. Supp. 2d 940 (S.D. Ohio 2009).  In that case, two plaintiffs alleged that one of the defendants violated their rights "under the FDCPA, by filing a proof of claim [in their bankruptcy proceeding] which sought fees which could not be lawfully recovered."  Id. at 946. In response to a motion to dismiss that invoked the FDCPA statute of limitations, Judge Rice ruled that plaintiffs'

> claim under the FDCPA . . . predicated upon the proof of claim filed in their case under Chapter 13, must be dismissed as barred by the statute of limitations, since the proof of claim was filed more than one year before this litigation was initiated.

Id. at 952.

Here, the FDCPA claim in Count VI is predicated upon WPB's representations at a hearing on November 20, 2014.  Plaintiff asserted that claim in a complaint filed more than one year later.  That claim is time barred, which entitles WPB to dismissal of Count VI.

### D. Count VII: Negligent Misrepresentation

In Count VII, McCarthy asserts that "[i]n stipulating to liquidated damages of $433,433.03 in [11-cv-207-SM], the Defendant negligently misrepresented that it was limiting its damages accordingly, and that any attempts to collect its debt

or otherwise redeem its collateral would therefore be based upon that amount." Doc. no. 1-1, at 11 of 14. While the court is not convinced that WPB's stipulation to a judgment amount in 11-cv-207-SM necessarily entailed or even implied a promise not to make a claim against McCarthy's bankruptcy estate that included post-judgment interest and costs, the court accepts that proposition for the purpose of ruling on WPB's motion to dismiss. McCarthy further asserts:

> 69. The Defendant's misrepresentation was made for the purpose of inducing the Plaintiff to forego her rights to put the Defendant to its burden of proof in establishing damages.
>
> . . . .
>
> 72. The Plaintiff justifiably relied upon the Defendant's misrepresentation in stipulating to an amount of damages that gave her significant equity in the Property, and presumably protected her from the Defendant obtaining relief from the automatic stay and ultimately foreclosing.
>
> 73. As a result of Defendant's misrepresentation, the Plaintiff sustained damages, including, but not limited to, the loss of the Property and her equity therein, when the Defendant obtained relief after proceeding upon a far greater debt amount than what it had agreed to in [11-cv-207-SM].

Id. at 11, 12 of 14.

Defendant moves to dismiss Count VII, arguing that: (1) the "statement" underlying plaintiff's negligent misrepresentation claim is not actionable because it is subject to the litigation privilege; and (2) recovery on this claim is barred by the

20

economic loss doctrine.  While defendant is entitled to the
protection of the economic loss doctrine, there are three more
fundamental problems with plaintiff's claim for negligent
misrepresentation.

Under the common law of New Hampshire, to state a claim for
negligent misrepresentation, a plaintiff must allege "that the
defendant[ ] made a representation with knowledge of its falsity
or with conscious indifference to its truth with the intention
to cause [the plaintiff] to rely upon it and that [the
plaintiff] justifiably relied upon it." Akwa Vista, LLC v. NRT,
Inc., 160 N.H. 594, 601 (2010) (citing Snierson v. Scruton, 145
N.H. 73, 77 (2000); see also Wyle v. Lees, 162 N.H. 406, 413
(2011) (describing the elements negligent misrepresentation as
"a negligent misrepresentation of a material fact by the
defendant and justifiable reliance by the plaintiff").  In
addition, to prevail on a negligent misrepresentation claim, a
plaintiff must prove that the damages she claims were caused by
the defendant's misrepresentation.  See Wyle, 162 N.H. at 414.

The first problem with plaintiff's claim concerns the
nature of the representation on which it is based.  Assuming
that WPB's stipulation to damages in the amount of $433,433.03
in 11-cv-207-SM was also a representation that it would not
assert a claim in excess of that amount against McCarthy's
bankruptcy estate, that representation was not statement of

21

fact; it was a promise concerning future conduct.  "[A] promise is not a statement of fact and hence cannot, as such, give rise to an action for misrepresentation, [but] a promise can imply a statement of material fact about the promisor's intention and capacity to honor the promise." Hydraform Prods. Corp. v. Am. Steel & Alum. Corp., 127 N.H. 187, 200 (1985) (citing W. Prosser, The Law of Torts 762–63 (5th ed. 1984)).  Here, however, plaintiff has not alleged that when WBP stipulated to damages of $433,433.03 in 11-cv-207-SM, it intended, at some later date, to make a claim against McCarthy's bankruptcy estate in excess of that amount.

There is also a problem with reliance, which is a necessary element of a claim for negligent misrepresentation.  See Plourde Sand & Gravel Co. v. JGI E., Inc., 154 N.H. 791, 800 (2007) (citing Restatement (Second) of Torts § 552 (1976); Hall v. United Parcel Serv. of Am., Inc., 555 N.E.2d 273, 276 (N.Y. 1990)).  In her complaint, McCarthy asserts that in reliance upon WPB's stipulation, she gave up her right to compel WPB to prove its damages.  However, McCarthy does not allege any facts to suggest that WPB could not have proven at least $433,433.03 in damages.  Moreover, in his order granting summary judgment to WPB, Judge McAuliffe stated that the stipulated amount was "decidedly in [McCarthy's] favor, and [was] based in substantial part on [her] own expert's opinion." Hersey, doc. no. 64, at 5.

22

Based upon Judge McAuliffe's analysis, it seems clear that
McCarthy did not give up the opportunity to litigate a more
favorable judgment; WPB's stipulation gave her the benefit of
any success she might have had litigating the amount of WPB's
damages.  All that McCarthy appears to have given up, in
reliance upon WPB's stipulation, was the opportunity to expend
even more time and money on additional litigation that had no
likelihood of resulting in a more favorable judgment.  If either
party gave up anything by stipulating to the amount of damages,
WPB gave up the opportunity to prove its entitlement to an even
larger award.  In sum, it is difficult to see how McCarthy was
harmed by her reliance upon WBP's stipulation.

The third problem with McCarthy's claim concerns causation,
which is also a necessary element of a claim for negligent
misrepresentation.  See Wyle, 162 N.H. at 414.  In a nutshell,
she asserts that WPB's stipulation in 11-cv-207-SM caused her to
lose the mortgaged property and her equity in it.  That
assertion makes no sense.  WPB conducted a foreclosure sale
because the Bankruptcy Court permitted it to do so, based upon
its acceptance of WPB's uncontested evidence concerning the
amount of its secured claim against McCarthy's bankruptcy
estate.  Plaintiff does not explain, and the court cannot
fathom, how WPB's stipulation in 11-cv-207-SM prevented McCarthy
from contesting the evidence WPB introduced in the Bankruptcy

Court.   Thus, she has not adequately alleged that WPB's
stipulation caused the damages she seeks in Count VII.

Finally, the court agrees with WPB that even if McCarthy
had adequately alleged a claim for negligent misrepresentation,
that claim would be barred by the economic loss doctrine.   The
court of appeals for this circuit has recently described the
contours of that doctrine in New Hampshire:

> The economic loss doctrine is a common-law
> doctrine according to which parties bound by a
> contract may not "'pursu[e] tort recovery for purely
> economic or commercial losses associated with the
> contract relationship.'"   See Plourde Sand & Gravel
> Co. v. JGI E., Inc., 154 N.H. 791, 917 A.2d 1250, 1253
> (2007) (quoting Tietsworth v. Harley-Davidson, Inc.,
> 270 Wis. 2d 146, 677 N.W.2d 233, 241 (2004), further
> proceedings at 303 Wis. 2d 94, 735 N.W.2d 418 (2007)).
> . . .
>
> In its broadest form, the doctrine reaches beyond
> the contractual context, and provides that "a
> plaintiff may not . . . recover in a negligence claim
> for purely 'economic loss.'"   See id. at 1253-54
> (quoting Border Brook Terrace Condo. Ass'n v.
> Gladstone, 137 N.H. 11, 622 A.2d 1248, 1253 (1993));
> see also Kelleher v. Marvin Lumber & Cedar Co., 152
> N.H. 813, 891 A.2d 477, 495 (2005) ("We have . . .
> recognized that a plaintiff may not ordinarily recover
> damages for purely economic loss in tort . . . .").
> In other words, the doctrine holds that, in the
> absence of a specific duty, no general duty exists to
> avoid negligently causing economic loss.   This version
> of the doctrine has been adopted in New Hampshire.   As
> the New Hampshire Supreme Court has stated, "[i]n New
> Hampshire, the general rule is that persons must
> refrain from causing personal injury and property
> damage to third parties, but no corresponding tort
> duty exists with respect to economic loss."   See
> Plourde, 917 A.2d at 1254 (quotation marks omitted).

Schaefer v. IndyMac Mortg. Servs., 731 F.3d 98, 103-04 (1st Cir. 2013).

In Schaefer, the plaintiff, who had defaulted on his mortgage, asserted claims for negligence and negligent misrepresentation.  Those claims were based upon post-default conduct by his lender that, in the plaintiff's view, prevented him from: (1) applying for reinstatement of his delinquent loan; and (2) submitting certain information that was required to support an application for a loan modification.  See 731 F.3d at 101-02.  The court of appeals held that the plaintiff's claims were barred by the economic loss doctrine because he was seeking monetary damages arising from the manner in which the defendant exercised its rights, under the mortgage agreement, to remedy the plaintiff's default.  See id. at 109.

Like the parties in Schaefer, who were bound by a mortgage agreement, McCarthy and WPB were bound by the promissory note and the mortgage that McCarthy gave to IRF.  McCarthy's claim for negligent misrepresentation arises from the manner in in which WPB litigated the amount to which it was entitled as a result of McCarthy's breach of her duties under the promissory note and/or the mortgage agreement.  As damages, she seeks to recover proceeds from the foreclosure sale in excess of the $433,433.03 judgment that Judge McAuliffe granted WPB on its claim for breach of contract.  The conclusion is inescapable

that McCarthy is seeking tort recovery for a purely economic loss associated with her contractual relationship with WPB.  On that basis, her claim is barred by the economic loss doctrine.

In so ruling, the court recognizes that "[t]here is no question that New Hampshire recognizes an exception to the economic loss doctrine for certain negligent misrepresentation claims." Schaefer, 731 F.3d at 108 (citing Wyle, 162 N.H. at 409-12; Plourde, 154 N.H. at 799-801).  McCarthy's claim, however, falls outside the scope of the negligent misrepresentation exception.  In Plourde, which involved a claim by a gravel supplier that a company that tested its gravel misrepresented the quality of that gravel to a purchaser, the NHSC explained that a plaintiff may invoke the negligent misrepresentation exception against a defendant

> who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

154 N.H. at 799 (quoting Restatement (Second) of Torts § 552(1)).

When WPB stipulated to the amount of damages in 11-cv-207-SM, it was not providing information to guide McCarthy in a business transaction.  It was stating its position in a court

case in which McCarthy had become its adversary due to her
failure to pay back the loan she had received from IRF.  In
other words, the circumstances of this case bear no resemblance
to the scenario the Plourde court drew from the Restatement.
Thus, the negligent misrepresentation exception, as described in
Plourde, is inapplicable to the circumstances of this case.

    In Schaefer, where the plaintiff asserted claims arising
from the foreclosure of his mortgage, the court of appeals
responded to his invocation of the negligent misrepresentation
exception by explaining that "the negligent misrepresentation
exception reaches only those representations that precede the
formation of the contract or that relate to a transaction other
than the one that constitutes the subject of the contract." 731
F.3d at 109 (citing Wyle, 162 N.H. at 411-12).  Here, the
representation at issue was made long after the formation of the
contract between IRF and McCarthy, and it related solely to the
transaction that was the subject of that contract.  Thus,
McCarthy's claim does not fall within the negligent
misrepresentation exception.  As a consequence, that claim is
barred by the economic loss doctrine.

### IV. Conclusion

    For the reasons detailed above, defendant's motion to
dismiss Counts III through VIII, document no. 5, is granted.

27

This case now consists of the claims stated in Counts I, II, and III.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

July 26, 2016

cc:   Sabin R. Maxwell, Esq.
      James E. Higgins, Esq.