Mary Hersey McCarthy

    v.                                Civil No. 16-cv-081-LM
                                       Opinion No. 2017 DNH 222
WPB Partners, LLC


# O R D E R

    Mary Hersey McCarthy brings suit, alleging claims against
WPB Partners, LLC ("WPB") that arose from WPB's foreclosure and
sale of McCarthy's mortgaged property.  Following the court's
orders on WPB's motion to dismiss and McCarthy's motion for
summary judgment, see doc. nos. 10 & 27, the only remaining
claims in this case are McCarthy's claims for violation of the
duty of due diligence and violation of the duty of good faith.

    WPB now moves for summary judgment on those claims,[1] and
McCarthy objects.

## STANDARD OF REVIEW

    A movant is entitled to summary judgment if it "shows that
there is no genuine dispute as to any material fact and [that

---

[1] WPB also moves for summary judgment on plaintiff's claim for
breach of contract.  As discussed above, the court previously
granted McCarthy's motion for summary judgment on that claim.
See doc. no. 27.  Accordingly, WPB's motion is denied as to
McCarthy's claim for breach of contract.

it] is entitled to judgment as a matter of law." Fed. R. Civ.
P. 56(a).  In reviewing the record, the court construes all
facts and reasonable inferences in the light most favorable to
the nonmovant.  Kelley v. Corr. Med. Servs., Inc., 707 F.3d 108,
115 (1st Cir. 2013).

## BACKGROUND[2]

Through a promissory note dated December 21, 2006, McCarthy,
whose name was then Mary Hersey, borrowed $350,000 from
Investment Realty Funding, Inc. and signed a mortgage the same
day to secure the loan.  The mortgaged property was undeveloped
land on Mirror Lake in Tuftonboro, New Hampshire ("the
property").  WPB acquired the note and mortgage in August 2009
after Investment Realty filed for bankruptcy protection.  When
the note matured on December 21, 2009, WPB demanded payment.
McCarthy failed to pay, and WPB began foreclosure proceedings,
scheduling a foreclosure sale for October 22, 2010.

I.  Previous Litigation Regarding the Foreclosure

On October 4, 2010, McCarthy filed an action in state court
seeking a temporary restraining order to halt the foreclosure
sale.  The state court did not grant McCarthy's request for a

_____

[2] The court provided a detailed history of the complex
background of this case in its order granting McCarthy's partial
motion for summary judgment.  For that history, see doc. no. 27.

temporary restraining order but did grant a preliminary injunction following a hearing. The state court then granted leave to McCarthy to amend her complaint to add new claims and leave to WPB to assert a counterclaim for breach of contract based on the note. WPB then removed the case to this court. See Hersey v. WPB Partners, LLC, 11-cv-207-SM (D.N.H. 2011).[3]

Once in federal court, McCarthy amended her complaint again, adding several claims. WPB then moved to dismiss the complaint. While that motion was pending, McCarthy notified the court that she had filed for bankruptcy relief under Chapter 13 in the bankruptcy court for the District of New Hampshire. See McCarthy I, doc. nos. 27 & 28; In re Mary Hersey McCarthy, 11-13342-JMD (Bankr. N.H. Apr. 6, 2012). Although WPB's counterclaim was initially stayed under 11 U.S.C. § 362, the bankruptcy court lifted that stay to the extent necessary to resolve the issues in McCarthy I, including determining the validity of WPB's mortgage. In re McCarthy, doc. no. 93 at 1. The court in McCarthy I also permitted McCarthy to continue prosecuting her claims against WPB after the bankruptcy trustee abandoned those claims on behalf of the bankruptcy estate. See McCarthy I, endorsed order, Jan. 4, 2013.

---

[3] Although the case was previously removed to federal court, it was remanded before either party made any substantive filings. For that reason, the court will refer to Hersey v. WPB Partners, LLC, 11-cv-207-SM as "McCarthy I."

In January 2013, WPB moved to dismiss all of McCarthy's claims, and McCarthy objected.  The court granted WPB's motion to dismiss, in part, paring the claims remaining in the case to McCarthy's usury claim and WPB's breach of contract claim on the note.

WPB then filed separate motions for summary judgment on each of the remaining claims.  On February 11, 2014, the court issued an order granting both motions.  With respect to the damages due on WPB's counterclaim, the court explained that "[f]ollowing a discussion with respect to the existence of any material dispute related to calculating the liquidated damages amount, the parties agreed that the amount of $443,443.03, as of September 6, 2011 (a date contemporaneous with the filing of the bankruptcy petition) would be appropriate."  Doc. no. 64 at 4.[4] The court then entered judgment in favor of WPB on its counterclaim for breach of contract and liquidated damages. McCarthy I, doc. no. 65.  McCarthy appealed, and the First Circuit Court of Appeals affirmed the judgment on February 12, 2015.

---

[4] Although the court stated in the body of the summary judgment order that the liquidated damages were $443,433.03, in the conclusion the court awarded $433,433.03.  Judgment entered for $433,433.03.  Neither party moved to correct the amount in the judgment, and both parties use the $433,433.03 amount stated in the judgment.

II. <u>Permission to Foreclose</u>

WPB filed the summary judgment order in the bankruptcy court, forwarding a copy of the filing to McCarthy's counsel. <u>See</u> <u>In re McCarthy</u>, doc. no. 177. WPB then moved in the bankruptcy court for relief from 11 U.S.C. § 362(d)'s automatic stay to allow it to foreclose on the property. In support, WPB asserted that McCarthy owed it $576,664.46 under the note, an amount which included the judgment in <u>McCarthy I</u> and the interest and costs that had accrued since September 6, 2011. In response, McCarthy argued that foreclosure was inappropriate because she had enough equity in the property to adequately protect WPB's interest.

The bankruptcy court held a hearing on WPB's motion to foreclose. During that hearing, the parties presented evidence concerning the value of WPB's claim and the value of the property. <u>In re McCarthy</u>, doc. no. 244, at 3. WPB presented evidence showing that its secured claim now totaled $672,079.24, including interest, attorneys' fees, and costs. <u>Id.</u> McCarthy did not present any evidence contesting these claims. <u>Id.</u> As for the value of the property, each side elicited expert testimony from an appraiser. <u>Id.</u> WPB's appraiser testified, consistent with his appraisal, that the fair market value of the property was $535,000. <u>Id.</u> at 4. On the other hand, McCarthy's

appraiser testified, consistent with her appraisal, that the value of the property was $900,000.  Id. at 5.

The bankruptcy court granted WPB's motion for relief from the automatic stay, concluding that McCarthy had a less than 5% equity cushion in the property and that, as a result, WPB's secured claim against McCarthy was not adequately protected. Id. at 8.  In doing so, the court concluded that WPB possessed a claim on McCarthy's estate for $672,079.24, a figure which included the judgment in McCarthy I plus other interest, attorneys' fees, and costs.  Id. at 3.  The court accepted WPB's testimony concerning the claim because "[t]he debtor presented no evidence to the contrary."  Id.

The court also concluded that the fair market value of the property was $705,000.  Id. at 8.  The court's analysis into fair market value evaluated both appraisals, taking into consideration their respective strengths and weaknesses, as revealed by the direct and cross examination of the parties. Id. at 6-8.  Based on the bankruptcy court's order, WPB initiated foreclosure proceedings on the property.

III.  The Auction

WPB scheduled the foreclosure sale for March 20, 2016.  It hired James R. St. Jean, a licensed auctioneer to conduct the auction.  To market the auction, WPB published the legal notice

of the sale in the New Hampshire Union Leader for three consecutive weeks.  See R.S.A. 479:25, I.  In addition to publishing the notice, WPB (or its agents) placed ads in the Boston Herald, the Manchester Union Leader, the New Hampshire Sunday News, the Laconia Citizen, and the Concord Monitor.  Further, the sale was advertised on St. Jean's website and details of the sale were emailed "to over 7,500 individuals on [St. Jean's] email list who ha[d] expressed interest in similar properties."  Doc. no. 18-3 at 3.  Signs were also displayed near the property advertising the auction.

The sale was held on the property.  On the day of the sale, the weather was overcast without precipitation and there was snow on the ground.  Access to the property was through Lang Pond Road and Piper Road.  At least a portion of Lang Pond Road was not plowed on the date of the auction sale.  Doc. no. 18-3 at 3 (noting that signs were placed "at the end of the plowed section of Lang Pond Road").  Nine people attended the auction, including St. Jean, two of his employees, and two WPB representatives.

Before the auction, WPB determined that it would not allow the property to be sold to a third-party for less than $500,000, which was about 70% of what the bankruptcy court determined was the property's fair market value.  WPB believed that this price was commercially reasonable.  During the auction, participants

placed several bids on the property, none of which exceeded

$150,000.  WPB then bid its $500,000 minimum price, and no

further bids were received.  Consequently, WPB purchased the

property through an affiliate for $500,000.

IV.  Post-Judgment Litigation

On April 3, 2015, the bankruptcy court dismissed the

bankruptcy action.  In May 2015, WPB moved in McCarthy I for a

post-judgment attachment on all of McCarthy's property that

would be liable for execution to secure the judgment it had been

awarded in that case.  In support, WPB explained that despite

its sale of the property for $500,000, McCarthy still owed it a

deficiency of over $250,000.  The calculation of that debt

included interest, costs, attorneys' fees, and expenses that had

accrued after September 6, 2011, the date through which

liquidated damages were calculated in the judgment.  The court

denied WPB's motion for an attachment and concluded that the

liquidated damages it had awarded were for all damages arising

out of McCarthy's breach of the note.  The court reasoned that:

To the extent defendant may be suggesting that it was entitled

to entry of judgment in the amount of $443,443.03 as of

September 6, 2011, it is entirely incorrect.  That was the

amount due upon filing of the bankruptcy petition, and the

amount defendant's counsel specifically agreed to accept as the

judgment amount in lieu of proving up damages at the time summary judgment was entered. McCarthy I, doc. no. 91 at 1. WPB did not seek clarification of the decision or appeal.

V.  History of this action

On January 12, 2016, McCarthy brought suit against WPB in state court, alleging eight claims that challenged the foreclosure sale, including a breach of contract claim based on the mortgage that sought to recover the difference between the judgment amount of $433,433.03 in McCarthy I and the sale price of the property, $500,000.00.  WPB removed the case to this court, and moved to dismiss five of McCarthy's eight claims. The court granted the motion, dismissing McCarthy's claims for violation of RSA 358-C, violation of RSA 358-A, violation of the Fair Debt Collection Practices Act, negligent misrepresentation, and enhanced compensatory damages (Counts IV through VIII).  WPB then filed its answer and asserted two counterclaims for breach of contract based on the note and mortgage, seeking interest, costs, and fees in Counterclaim I and foreclosure costs, real estate taxes, and attorneys' fees in Counterclaim II.

McCarthy moved for summary judgment on her claim for breach of contract and WPB's two counterclaims for breach of contract. The central question in resolving those claims was whether the judgment in McCarthy I precluded WPB from collecting additional

damages under the note or mortgage.  The court granted McCarthy's motion, concluding that WPB was precluded from seeking additional damages under the note because "the court [in McCarthy I] . . . made it clear that in denying the motion for a post-judgement attachment the liquidated damages awarded in the judgment included all damages WPB could seek for breach of the note."  Id. at 14-15.  The court also concluded that the "liquidated damages award in McCarthy I . . . included all of the additional damages WPB claims . . . for breach of the mortgage."  Id. at 18-19.  Accordingly, the court dismissed WPB's counterclaims and awarded McCarthy damages in the amount of the difference between the foreclosure sale price and the McCarthy I judgment.  Id. at 20.

Following the court's order on McCarthy's summary judgment motion, the claims remaining in the case are McCarthy's claims for breach of the duty of due diligence (Count II) and breach of the duty of good faith (Count III).

## DISCUSSION

WPB now moves for summary judgment on McCarthy's claims for breach of the duty of due diligence and breach of the duty of good faith.  McCarthy objects, arguing that she has presented evidence demonstrating that a genuine issue of material fact exists as to both claims.

"[A] mortgagee executing a power of sale," like WPB here, "is bound both by the statutory procedural requirements <u>and</u> by a duty to protect the interests of the mortgagor through the exercise of good faith and due diligence." Murphy v. Fin. Dev. Corp., 126 N.H. 536, 540 (1985). These duties are "essentially that of a fiduciary." Id. at 541. Finally, "the duties of good faith and due diligence are distinct [and] . . . any inquiry as to their breach calls for a separate consideration of each." Id. at 542-43 (quoting Wheeler v. Slocinski, 82 N.H. 211, 213 (1926)).

I. <u>Duty of Due Diligence (Count II)</u>

McCarthy contends that she has adduced enough evidence to create a genuine issue of material fact on her diligence claim. In support, McCarthy points to the testimony of her expert, Henry S. Maxfield, who criticized WPB's handling of the foreclosure sale because, among other reasons, Lang Pond Road and Piper Road, the two roads to the property, were closed to vehicle traffic until April. Maxfield further testified that Lang Pond Road was open to snowmobile traffic at the time of the auction. McCarthy also relies on the evidence in the record demonstrating that the fair market value of the property was more than the foreclosure sale price. In response, WPB contends that Maxfield's testimony is not material to the diligence

inquiry and that McCarthy's evidence of fair market value is not the same as evidence of fair price at the foreclosure sale.

A mortgagee exercising a power of sale "must exert every reasonable effort to obtain 'a fair and reasonable price under the circumstances,' even to the extent, if necessary, of adjourning the sale or of establishing an upset price below which he will not accept any offer." Murphy v. Fin. Dev. Corp., 126 N.H. 536, 541 (1985) (internal quotation marks omitted). "The issue of the lack of due diligence is whether a reasonable man in the lender's place would have adjourned the sale or taken other measures to receive a fair price." Id. at 542 (internal citation omitted). The test for a fair price is whether the mortgagee obtained "a fair and reasonable price under the circumstances in which [it] acts." Reconstruction Fin. Corp. v. Faulkner, 101 N.H. 352, 361 (1958). "What constitutes a fair price, or whether the mortgagee must establish an upset price, adjourn the sale, or make other reasonable efforts to assure a fair price, depends on the circumstances of each case." Murphy, 126 N.H. at 541; see also Carrols Equities Corp. v. Jacova, 126 N.H. 116, 119 (1981). "The mortgagor has the burden of proving a lack of due diligence." Carrols, 126 N.H. at 118.

In Murphy, 126 N.H. at 542-43, the New Hampshire Supreme Court concluded that the foreclosing mortgagee violated its duty of due diligence when it purchased the plaintiffs' property at a

foreclosure sale for a price that satisfied the debt owed to it but failed to return any of the plaintiff's equity.  In doing so, the court concluded that the mortgagee's advance knowledge of appraisal evidence showing that the fair market value of the property was significantly more than the debt the plaintiffs owed was, among other things, a basis for concluding that the mortgagee had failed to take reasonable steps to obtain a fair price.  Id.  Moreover, although fair market value and fair price at a foreclosure sale are different concepts, see Murphy, 126 N.H. at 545-46, the New Hampshire Supreme Court has made it clear that evidence of fair market value is a relevant factor in evaluating fair price at a foreclosure sale.  First NH Mortg. Corp. v. Greene, 139 N.H. 321, 325 (1995) (trial court's finding of violation of due diligence was supported by its determination that "purchase price was clearly inadequate," which in turn was "supported by the appraisal evidence admitted at trial"); Silver v. First Nat'l Bank, 108 N.H. 390, 392-393 (1967) (finding that appraisal valuation was evidence of what "the property would have brought at a reasonably adjourned sale").

    Here, McCarthy points to the appraisal that she submitted to the bankruptcy court, which concluded that the property had a fair market value of $900,000, and the bankruptcy court's order finding that the fair market value of the property was $705,000. As in Murphy, those valuations suggest that McCarthy had a

significant equity stake in the property that WPB failed to recover in the foreclosure sale.

In addition, McCarthy has presented testimony from its expert challenging the reasonability of holding the sale when road access to the property was limited.[5]  As WPB points out, "[a] fair price is "'the price obtainable on a fair sale reasonably adjourned rather than the price obtainable when the season for selling was most favorable.'"  GEM Realty Trust v. First Nat'l Bank, 1995 WL 127825, at *4 (D.N.H. Mar. 20, 1995) (quoting Silver v. First Nat'l Bank, 108 N.H. 390, 392 (1967)); Wheeler, 82 N.H. at 215.  Although not clearly presented, McCarthy's argument about road access appears to be about more than just the undesirability of marketing the property during the winter season.  Rather, McCarthy appears to also argue that the road closures limited potential bidders' access to the

---

[5] The court observes that while WPB has made several persuasive arguments concerning the materiality of portions of Maxfield's proposed testimony, it did not object to the admission of Maxfield's deposition testimony in the context of its motion for summary judgment.  WPB has, however, moved separately to exclude Maxfield's testimony under Federal Rule of Evidence 702, arguing that Maxfield is not qualified as an expert and that his opinion is neither relevant nor reliable. See doc. no. 34.  The court will reserve any ruling on the admissibility of Maxfield's testimony for when it resolves WPB's motion to exclude.

auction site.  See doc. no. 14 (alleging that "any bidders had
to drive on a closed public road . . .  before traversing
another 1,000 feet in the snow").  Based on the evidence of
limited road access, a factfinder could conclude that WPB did
not undertake all reasonable efforts to ensure that prospective
bidders could attend the foreclosure sale or that a reasonable
adjournment was warranted under the circumstances.

Therefore, WPB's motion for summary judgment is denied as
to McCarthy's claim for violation of the duty of due diligence.

II. Duty of Good Faith

McCarthy asserts that WPB violated its duty of good faith
because it misrepresented the amount of its McCarthy I judgment
to the bankruptcy court to obtain permission to foreclose, its
conduct during the foreclosure sale was done in bad faith, and
the price of the sale was unconscionable.  In response, WPB
argues that the statements it made in the bankruptcy court were
not misrepresentations and are protected under the litigation
privilege.  Further, WPB argues that it did not conduct the
foreclosure sale in bad faith and that the purchase price for
the property was not unconscionable.

In order "to constitute bad faith there must be an
intentional disregard of duty or a purpose to injure."  Murphy,

126 N.H. at 542-43. Further, "[i]nadequacy of price alone is not sufficient to demonstrate bad faith unless the price is so low as to shock the judicial conscience." Id. at 541.

A.  Statements to Bankruptcy Court

McCarthy asserts that WPB acted in bad faith when it represented to the bankruptcy court in its motion for relief from the automatic stay that she owed damages beyond the judgment amount in McCarthy I.  In response, WPB argues that its statements were not misrepresentations and that the statements it made in the bankruptcy court are exempt from liability under New Hampshire law.

Under New Hampshire law, "certain communications are absolutely privileged and therefore immune from civil suit." Provencher v. Buzzell–Plourde Associates, 142 N.H. 848, 853 (1998) (quoting Pickering v. Frank, 123 N.H. 326, 328 (1983)). "Statements made in the course of judicial proceedings constitute one class of communications that is privileged from liability in civil actions if the statements are pertinent or relevant to the proceedings." Id. "[T]he policy of granting absolute immunity for such statements 'reflects a determination that the potential harm to an individual is far outweighed by the need to encourage participants in litigation, parties, attorneys, and witnesses, to speak freely in the course of

judicial proceedings.'" Pickering, 123 N.H. at 329 (quoting McGranahan v. Dahar, 119 N.H. 758, 763 (1979)). Based on this policy, the First Circuit has concluded that the New Hampshire Supreme Court would view the privilege as "extend[ing] to any civil claim arising from statements made in the course of a judicial proceeding." Hugel v. Milberg, Weiss, Bershad, Hynes & Lerach, LLP, 175 F.3d 14, 17 (1st Cir. 1999); see also Provencher, 142 N.H. at 856 (applying privilege to bar negligence, negligent misrepresentation, and fraud claims).

Here, there is no dispute that the statement at issue occurred in a judicial proceeding and that the statement was relevant to that proceeding. Nevertheless, McCarthy contends that the privilege should not apply based on the circumstances of this case. In support of this proposition, she cites language in Dahar, 119 N.H. 758, in which the New Hampshire Supreme Court observed that because the absolute privilege is tantamount to immunity it "must be reserved for those situations where the public interest is so vital and apparent that it mandates complete freedom of expression without inquiry into a defendant's motives." Id. at 762. But as the Dahar court concluded in the very paragraph on which McCarthy relies, "judicial proceedings constitute one such situation" in which the absolute privilege is warranted. Id. Further, McCarthy has not presented a persuasive argument as to why the privilege

should not apply in this case.  Therefore, because there is no dispute that the statements at issue occurred during a judicial proceeding and were relevant to that proceeding, they are absolutely privileged from civil liability under New Hampshire law.

####    B.  Foreclosure Conduct as Evidence of Bad Faith

McCarthy also contends that WPB's conduct at the foreclosure sale is evidence of bad faith.  In support, McCarthy asserts that "[g]iven the evidence discussed above [concerning WPB's diligence] as to the manner in which the Defendant marketed and conducted the foreclosure auction so as to discourage competitive bidders and its knowledge of the significantly higher value of the Property than what it accepted at foreclosure, there are genuine issues of material fact whether the foreclosure price was so low as to shock the judicial conscience."  Doc. no. 29-1 at 6.  In response, WPB contends that the price paid at the foreclosure sale does not shock the conscience.

To create a genuine issue of material fact on her claim for violation of the duty of good faith, McCarthy must point to some evidence demonstrating that WPB conducted the foreclosure with an intent to injure or harm her.  In Murphy, 126 N.H. at 542, the New Hampshire Supreme Court reversed a master's finding that

the defendant lender had violated the duty of good faith.  As this court observed in People's United Bank v. Mountain Home Developers of Sunapee, LLC, 858 F. Supp. 2d 162, 169 (D.N.H. 2012), in doing so, the Murphy court set a high threshold for the type of conduct that qualifies as a violation of the duty of good faith:

> In Murphy, the mortgagees: (1) provided minimal public notice of the foreclosure sale, which had been postponed from an earlier date, see id. at 543; (2) purchased the property themselves at a sale with no other bidders present, see id. at 539; (3) bought the property for an amount equal to the amount owed by the mortgagors, $27,000, see id.; (4) should have realized that the mortgagors' "equity in the property was at least $19,000," id. at 542; and (5) sold the property for $38,000 two days after purchasing it for $27,000, see id. at 539. Despite all that, the court ruled that "[t]here [was] insufficient evidence in the record to support the master's finding that the [mortgagees] acted in bad faith in failing to obtain a fair price for the [mortgagors'] property." Id. at 542.

People's United, 858 F. Supp. 2d at 169.

Here, nothing in the summary judgment record rises to the level of harmful or injurious conduct that the New Hampshire Supreme Court rejected in Murphy as a valid basis for a violation of the duty of good faith.  WPB provided more than minimal notice and purchased the property at an amount higher than McCarthy's debt.  Further, other bidders were present and participated in the foreclosure auction.  Finally, there is no evidence that WPB had reason to know that it stood to profit on a quick turnaround sale or that it completed such a sale.

Therefore, McCarthy has failed to point to sufficient evidence from which a factfinder could conclude that WPB's conduct violated the duty of good faith.

McCarthy also contends that the foreclosure sale price was so low that it shocked the judicial conscience. In support, McCarthy points to the disparity between the fair market value of the property and the price received at the foreclosure sale. The summary judgment record contains three reference points for the property's fair market value: WPB's appraisal valuing the property at $535,000; the bankruptcy court's order valuing the property at $705,000; and McCarthy's appraisal valuing the property at $900,000. The foreclosure sale price is 93% of WPB's valuation, 71% of the bankruptcy court's fair market value finding, and 55% percent of McCarthy's valuation.

As a matter of law, that price disparity does not support a finding that the foreclosing mortgagee violated its duty of good faith. See Resolution Trust Corp. v. Carr, 13 F.3d 425, 430 (1st Cir. 1993) (applying Massachusetts law) (noting that courts have granted dispositive pretrial motions on foreclosure claims with foreclosure prices as low as 39% of market value); Peter v. Wells Fargo Home Mortgage, Inc., No. 01-C-664, 2012 WL 9492844, at *1 (N.H. Super. July 30, 2012) (relying on Carr and finding that foreclosure sale at 85% of market value did not shock judicial conscience as a matter of law); see also Olbres, 142

N.H. at 234 (affirming trial court's finding that foreclosure price that was 42% of pre-foreclosure appraisal did not violate duty of good faith). In short, the price that WPB paid for the property at the foreclosure sale is not so low as to shock the judicial conscience.

Accordingly, the court concludes that WPB is entitled to summary judgment on McCarthy's claim for a violation of the duty of good faith.

## CONCLUSION

For the foregoing reasons, WPB's motion for summary judgment (doc. no. 25) is granted as to McCarthy's claim for violation of the duty of good faith and is otherwise denied.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

October 16, 2017

cc:  Mark A. Darling, Esq
     James E. Higgins, Esq.
     Paul B. Kleimann, Esq.
     Sabin R. Maxwell, Esq.

21